FILED IN MY OFFICE
DISTRICT COURT CLERK
4/24/2012 4:05:11 PM
STEPHEN T. PACHECO

AO

**STATE OF NEW MEXICO
FIRST JUDICIAL DISTRICT COURT
COUNTY OF SANTA FE**

**T.J. and C.J., on behalf of their minor child B.J.,**

**Plaintiffs**

**vs.** **No. CV** D-101-CV-2012-01167

**Danny Pacheco, a City of Espanola Police Officer, and Sergeant Richard Gallegos, a City of Espanola Police Officer, and, Lieutenant Christian Lopez, a City of Espanola Police Officer, Defendant City of Espanola, a municipality,**

**Defendants,**

**COMPLAINT FOR RECOVERY OF DAMAGES DUE TO DEPRIVATION OF CIVIL RIGHTS, FALSE IMPRISONMENT, AND DEFAMATION**

Plaintiff T.J. and Plaintiff C.J. by and through counsel, The Kennedy Law Firm, brings this complaint on behalf of their minor child, B.J., pursuant to Section 1983 of the United States Constitution, the Fourth Amendments of the United States Constitution, N.M. Const. art. XII, § 1 and N.M.S.A. 1978 § 22-1-4, and the New Mexico Tort Claims Act and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiffs T.J., C.J. and their minor child, B.J., resided in Rio Arriba County, New Mexico, at all material times.

2. B.J. was attending Espanola Valley High School, an Espanola Municipal School District school, at all material times.

3. At all times relevant herein, Plaintiff C.J. and B.J. resided in Espanola, New Mexico, where the New Mexico Constitution gives each child the property right to a free public education. N.M. Const. art. XII, § 1 and N.M.S.A. 1978 § 22-1-4.

4. Defendant Officer Danny Pacheco is a City of Espanola Police Officer, and he was acting under the color of state law and in his individual capacity at all material times.

5. Defendant Sergeant Richard Gallegos is a City of Espanola Police Officer, and he was acting under the color of state law and in his individual capacity at all material times.

6. Defendant Lieutenant Christian Lopez is a City of Espanola Police Officer, and he was acting under the color of state law and in his individual capacity at all material times.

7. Defendant City of Española is responsible for the policies, customs, and practices of the agencies of the City, including the Española City Police Department and its employees. The City of Espanola assumes the risks incidental to the maintenance of a law enforcement agency and the employment of its law enforcement officers.

8. This Court has subject matter jurisdiction over the claim and jurisdiction over the parties.

9. Personal Jurisdiction is proper since all parties either resided or conducted business in the District. Additionally, the actions of the Defendants took place within the District.

10. Venue is properly laid in this district because all of the material acts and/or omissions complained of herein occurred in and around the Cities of Espanola and Santa Fe, New Mexico. Defendants are located in Santa Fe County.

## FACTUAL ALLEGATIONS

### I. DEFENDANT CITY OF ESPANOLA POLICE DEPARTMENT HAD PRIOR KNOWLEDGE OF A VIOLENT ATTACK ON B.J., BY STUDENT ON SCHOOL BUS

11. On January 22, 2010, B.J. was being transported to Espanola Valley High School in an Espanola Municipal School District school bus when K.A., a minor student, began kicking and punching the back of B.J.'s seat.

12. K.A. punched B.J., in his face and the back of his head ten to twenty times. B.J. sustained two lacerations on his right cheek and swelling on his face and bumps on his head. K.A. broke B.J.'s glasses.

13. Espanola City Police Officer Ernie Romero was dispatched to Espanola Valley High School to produce the Uniform Incident Report related to K.A.,'s attach on B.J.

14. B.J. suffered lacerations, swelling, and suffered multiple bumps on his head, as reported in the related Uniform Incident Report.

15. Officer Romero contacted Martha Fernandez of Juvenile Probation to advise her of the incident and sought the criminal prosecution of K.A..

16. K.A. was not expelled from Espanola Valley High School for his violent battery on B.J., although later B.J. was expelled from Espanola Valley High School for drawing pictures for a horror movie and creating a list of characters for his movie story boards.

17. Defendant City of Espanola and the Defendant officers knew or should have known that school administrators were failing to protect students like B.J., from being bullied by students like K.A., and that B.J., was in need of therapeutic services for having been a victim of a violent crime.

18. Defendant City of Espanola placed officers, such as Defendant Pacheco, in the Espanola High School, who they knew or should have known was a threat to the safety of students as he has a practice and pattern of violating the constitutional and privacy rights of students.

## II. DEFENDANT CITY OF ESPANOLA POLICE DEPARTMENT OFFICERS' INITIAL INVESTIGATION INTO ALLEGED "HIT LIST".

19. Ms. Devanna Ortega, the Assistant Principle of Espanola Valley High School, is an Espanola Municipal District Schools employee.

20. On September 7, 2010, at approximately 2 p.m., Ms. Ortega called for security to escort B.J., to her office.

21. School security guard Christopher Archuleta took B.J. from class to Ortega's office.

22. Defendants Officer Pacheco and City of Espanola Police Officer Christian Lopez were present in Ortega's office.

23. Defendants searched B.J.'s backpack and person.

24. During the search of B.J.'s backpack, Defendant officers found B.J.'s story boards (pencil and crayon drawings) of a horror movie; and, a list of movie characters on three ring binder lined papers.

25. One piece of lined paper seized from B.J.'s backpack had the words, "List for Hell," on the top and the following list of movie characters:

"1. Pink Whore;

2. Special Blonde;

3. Fat ASS;

4. Chris D;

5. Chriss [sic]; and

6. Austin."

26. Defendant Officer Christian D. Lopez alleged to the media that when he asked B.J., about the "List for Hell," and the pictures, "Billy told me the pictures were of a movie he was going to make."

27. Defendant officers falsely asserted to the media and in their incident reports that the "List for Hell," was a "hit list" of fellow students.

28. Defendant officers did not record their custodial questioning of B.J., in the school office.

29. B.J. did not have any weapon on his person or in his possession at all material times.

30. B.J. made no verbal threat to the students of Espanola Valley High School.

31. During the questioning of B.J. by the Defendant officers, Dr. Lloyd Vigil (school psychologist) determined that B.J. was in need of a psychiatric evaluation to determine whether B.J., was a threat to himself.

32. Defendant officers learned that B.J. was transported to St. Vincent's Treatment Center for psychiatric evaluation. Defendant officers disclosed to the media that B.J. was transported from school to a psychiatric medical evaluation in violation of B.J., right to privacy in his medical care.

33. Roberta Goodman, a clinician at St. Vincent's, clinically assessed B.J. and found he was not a threat to himself or others.

34. On September 7, 2010, Carlos Guzman, R.N., an employee of St. Vincent's Treatment Center, discharged B.J. into the care of C.J., his mother.

## III. <u>DEFENDANT OFFICERS' DEFAMATION & UNREASONABLE ARREST OF B.J.</u>

35. On September 8, 2010, Defendant Pacheco falsely reported to Defendant Lopez that B.J. had "escaped" from St. Vincent's Treatment Center.

36. On September 8, 2010, at 7:30 am, Defendant Pacheco falsely reported to Espanola High School security officer Ms. Alexandra Rosas that B.J., "had escaped from the physciatric [sic] unit that he was commited [sic] ."

37. According to Ms. Rosas Incident Report, she passed along Officer Pacheco's false claim to Mr. Arthur Salazar (the school principal), and to Ms. Devanna Ortega, the Assistant Principle of Espanola Valley High School.

38. As a result of Defendant Pacheco's false report, during the morning hours of September 8, 2010, the school's administration instituted a "lockdown," at the Espanola Valley High School. During the lockdown, students were confined to their classroom and not allowed to leave. All entrances to the school were closed, while the Espanola Police department and school security guards conducted a classroom by classroom search.

39. No weapons were found during the search of the students on campus.

40. Defendant Officer Pacheco's false claim resulted in a hysterical fear throughout the school that B.J. intended to commit a violent act against fellow classmates at Espanola Valley High School.

41. Officer Pacheco's false escape-from-a-mental-hospital claim was divulged to the press as well as school administrators slandering B.J. to the school and his community.

42. The press printed multiple news stories using B.J.'s name, quoting Defendant Officer Lopez as saying he "believes the boy, who moved to the area from Georgia about two years ago, had been picked on or bullied at school and that he's suffering from mental health problems."

43. B.J. did not attend classes at Espanola Valley High School following September 7, 2010. The police had no evidence that B.J. was going to bring a weapon to school or that B.J. had escaped from a mental hospital.

44. Nonetheless, Defendant Lopez publicly likened B.J., to one of the Columbine High School shooters, charactering B.J., to his school and community as a mentally unstable and violent threat to his fellow students.

45. On September 9, 2010, B.J. attended a counseling treatment with Sarah Whitmire at Ayundantes on North Riverside Drive.

46. Defendant Gallegos interrupted B.J.'s treatment with Ms. Whitmire to execute a warrantless arrest of B.J.

47. Defendant Gallegos unlawfully arrested B.J., stopping B.J.'s counseling treatment session to place him in handcuffs.

48. Without probable cause, Defendant Gallegos charged B.J. with "Attempt to Commit a Felony" and "Aggravated Assault," alleging that B.J., intended to murder his fellow students- a felonious act.

49. Defendant Gallegos told the press "To me this kid was like a walking time bomb."

**COUNT I - FOURTH AMENDMENT VIOLATIONS: UNLAWFUL ARREST, UNLAWFUL SEIZURE & EXCESSIVE FORCE**

(Against Individual Defendant City of Espanola Police Department Officers)

50. Plaintiffs hereby incorporate paragraphs 1-49 as if fully restated herein.

51. Defendant Officer Pacheco's false statements, Defendant Lopez's false statements and associating B.J., with his fantasies about Columbine, and Defendant Gallegos' lockstep actions and misguided incident report resulted in the unreasonable arrest B.J.

52. Defendant Gallegos fabricate charges against B.J., relying exclusively on the purely speculative statements of Defendant Lopez and Defendant Pacheco.

53. Defendants Pacheco, Lopez, and Gallegos made no attempt to investigate the circumstances of B.J.'s release from St. Vincent's Counseling Center.

54. Defendant Gallegos seized B.J. from his counseling session.

55. Defendant Gallegos locked B.J. in an adult jail cell at the Espanola County Jail.

56. After some time in the jail cell, B.J.'s wrists and ankles were shackled and B.J. was taken to the Santa Fe Juvenile Detention Facility.

57. B.J. was detained in Santa Fe Juvenile Detention Facility for two days.

58. District Attorney Angela Pacheco immediately dropped the groundless charges, and B.J. was released.

59. Defendants intrusion on B.J.'s bodily integrity was not justified at its inception.

60. Defendants lacked probable cause to arrest B.J. for any charges.

61. Defendant's arrest of B.J. was not reasonable related to the circumstances that gave rise to it. Any reasonable officer should have known that it was unreasonable to arrest a fifteen (15) year old boy in the midst of a counseling session.

62. Defendant's criminalizing the pencil and crayon drawings of a bullied child serves no governmental purpose.

63. Defendant's use of force was objectively unreasonable as B.J. had committed no crime in drawing pictures.

64. Defendants had no lawful authority to detain B.J., and used excessive force when causing and when shackling of the boy.

65. Defendants' handcuffing and shacking of B.J. was a violation of his right to bodily integrity, served no governmental interest and constituted excessive force and an unreasonable seizure of the boy.

66. There is a direct cause between Defendant's unconstitutional actions and B.J.'s injuries. Defendant's actions were willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's constitutional rights.

67. As a result of the September 9, 2010 incident, Espanola Municipal District School held a meeting to discuss B.J., and whether he could be safely return to school.

68. Plaintiffs T.J. and C.J. were notified via postal mail on September 29, 2010 that B.J. was expelled from Espanola Public Schools. B.J. was forced to relocate to continue his education.

**COUNT II - TORT CLAIMS- BATTERY, FALSE IMPRISONMENT & DEFAMATION (ALL DEFENDANTS)**

69. Plaintiffs incorporate herein the allegations in paragraphs 1- 68 as if stated herein.

70. Under the facts as previously alleged, Defendants' excessive restraint and shackling of B.J. constituted battery.

71. The defendants' arrest of B.J. from a counseling session amounted to false imprisonment under state law.

72. Defendant Pacheco's false statements to Defendant Lopez and to school administrators; and, Defendant Gallegos' written statements about B.J.'s alleged motives against his fellow students and the false charging of attempted murder, amounted to defamation under state law.

73. The individual Defendant officers are liable to plaintiffs for the damages they caused and the City of Espanola is liable under the theory of *respondeat superior* for those damages caused by its employees.

**COUNT III**
**NEGLIGENCE CAUSING UNLAWFUL ARREST, BATTERY, FALSE IMPRISONMENT, DEFAMATION, PHYSICAL INJURY WAIVED BY THE NEW MEXICO TORT CLAIMS ACT AGAINST CITY OF ESPANOLA**

74. Plaintiffs claim the allegations above as though fully set forth herein.

City of Espanola Police Department are public employees and acted as representatives of the City of Espanola in the Espanola High School.

75. The City of Española negligently trained and supervised the individual Defendant Officers creating an unsafe environment in the Espanola High School consisting of a tort waived pursuant to the New Mexico Tort Claims Act, specifically NMSA 41-4-6.

76. The individual Defendant officers were acting within the course and scope of their duties when the injuries occurred to B.J.

77. Defendant City of Espanola is responsible under the doctrine of *respondeat superior* for the acts and omissions of the individual Defendant officers.

78. If a jury determines that individual officers either intentionally or negligently injured Plaintiffs, the Defendant City of Espanola is liable as well.

79. The Espanola Police Department had prior knowledge of two previous civil rights judgments against Defendant Pacheco.

80. Defendant Pacheco had previously violated the Fourth Amendment rights of two citizens in the Village of Questa and of another Espanola High school student.

81. Defendant Pacheco had been fired from Taos Pueblo Police Department, Tesuque Pueblo Police Department, and Santa Clara Police Department due to acts of dishonesty and unlawful seizures prior to his being hired by the City of Espanola.

82. As a direct and proximate result of Defendants' actions, Plaintiffs were injured, which damages include, but are not limited to, loss of enjoyment of life, physical injury, loss of reputation, and mental and emotional distress.

83. Defendant City of Espanola had a duty to exercise ordinary care when providing services for children in their charge, including Plaintiffs' child B.J.

84. Defendant Española School District breached its general and specific duties to exercise ordinary care by failing to adequately supervise and train its police officers.

85. The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for injuries resulting from negligent operation of a building or negligent battery. *See* N.M. Stat. Ann. ' 41-4-12.

86. The immunity granted by the Tort Claims Act does not apply to the negligence of the Defendant City employees who hired and fail to adequately train, supervise, or ratified the unlawful and unconstitutional behavior the individual Defendant officers resulting in the creation of an unsafe environment for public school students amounting to negligent operation of a building and the negligent battery of B.J.

87. As a direct and proximate result of Defendants' breach of duties, Plaintiffs suffered damages.

**PRAYER FOR RELIEF**

88. As a direct and proximate result of the actions of Defendants, B.J. has suffered injuries resulting in medical expenses, expenses for psychological care and counseling, likely to continue to result in expenses for necessary psychological care and counseling into the foreseeable future; pain and suffering, temporary and probable permanent psychological impairment, loss of reputation, loss of educational opportunities, and other damages.

89. The intentional nature of the acts of the individual Defendants were reckless

and in utter disregard of the rights and safety of B.J., constitute grounds for punitive damages to be awarded against them in an amount sufficient to punish them for the subject acts and to dissuade them and others from similar actions in the future.

90. Plaintiff seeks attorneys' fees and costs pursuant to Section 1988 of the Civil Rights Act.

**WHEREFORE** Plaintiff requests that this Court enter Judgment against Defendant's in an amount sufficient to compensate B.J. for his damages, for punitive damages against the individual Defendants, as determined by the Court, for the attorneys' fees and costs of this action, for prejudgment interest and post judgment interest as provided by law, and for such other and further relief as the Court deems just and proper.

Dated this 24th day of April, 2012.

Respectfully Submitted By:

**The Kennedy Law Firm**

Shannon Kennedy
1000 Second Street NW
Albuquerque, New Mexico 87102