# AFFIDAVIT OF CHRISTIAN LOPEZ

STATE OF NEW MEXICO      )
                                )ss.
COUNTY OF RIO ARRIBA    )

I, Christian Lopez, being duly sworn, states as follows:

1.    In September 2010, I was a Lieutenant with the Espanola Police Department.

2.    On Tuesday, September 7, 2010, at approximately 2:00 PM, I responded to a call at Espanola High School and met with school resource officer Danny Pacheco, Assistant Principal Devonna Ortega, school psychologist Lloyd Vigil, school security officer Chris Archuleta, and a student identified as B.J. in this lawsuit.

3.    During the meeting, B.J.'s mother identified as C.J. in this lawsuit arrived at the school.

4.    I was shown writings and drawings that, according to school resource officer Danny Pacheco, were found in B.J.'s backpack.

5.    B.J. admitted to me that he wrote and drew the documents.

6.    I observed three lists of names one of which was entitled "list for hell." B.J. stated that the names on the lists were names of other students in the school who "bugged him." The lists are attached hereto as Exhibit 1 to my affidavit.

7.    The drawings that concerned me depicted the following: a disturbing scene of a "shack of blood," a beheading by a man wearing a t-shirt emblazoned with the words "unleash hell," a bloody scene in a room that appeared to be a chemistry lab, a torture room with two people in restraints (one with the name Angel on her t-shirt) and two heads on a "head shelf," a graveyard with four headstones containing



names of fellow students with the words "to HELL" at the bottom.  These drawings are attached hereto as Exhibit 2 to may affidavit.

8.      B.J. stated the pictures were of scenes from a movie he wanted to make.  B.J. stated he used names of other students on the tombstones because they were students he would see on a daily basis who would "bug" him.

9.      I confirmed with assistant principal Mrs. Devonna Ortega that some of the names on the lists, including the "list for hell," and on the tombstones were students at Espanola High School.

10.     The fellow students identified on the lists are Jolene Benson (whom B.J. referred to as Pink Whore on the tombstone picture and the List for Hell); Chris D., and Austin.

11.     The fellow students identified on the tombstones were Jolene Benson, Austin C. and Chris D. Trujillo.

12.     I asked B.J. if he was going to hurt or injure himself and he replied "I don't think so" but that sometimes he didn't know what he was thinking in his head.

13.     At this point, B.J.'s mother C.J. intervened in the interview and stated that B.J. did have violent tendencies as he did express them two weeks prior, when she told him to take a bath and get ready for school the next day.  C.J. stated B.J. had placed his hand around C.J.'s throat and then grabbed her arms.  C.J. still had bruises on the upper part of her arm that were in the healing process, which I observed.  C.J. stated they were caused by Billy.

14.     I then asked B.J. if he thought he could hurt someone, or any of the fellow students on the list and B.J. stated that he did not know.

15. I again asked B.J. if he would hurt himself such as kill himself, and B.J. stated "I don't know sometimes I think that's the only way out."

16. C.J. expressed concern for her safety not knowing if B.J. would attack her.

17. I was informed by C.J. that she had contacted B.J.'s father T.J., who lived in Georgia, and T.J. was very aggressive and started yelling over the telephone.

18. The school also had in its possession and showed me a handwritten note from a student and an email from a teacher regarding B.J.

19. The handwritten note was authored by a Samantha Madrid and stated that B.J. was threatening her and telling her he was going to kill her. According to the note, B.J. told Samantha Madrid that she was on B.J.'s "hit list" and that he was going to bring a knife or gun and kill her. A copy of this handwritten note is attached to my affidavit as Exhibit 3.

20. The email was sent to Gloria Champion from teacher Josefina Litera at 11:44 AM on September 7, 2010. In it, Ms. Litera stated that a female student observed B.J. making a list and that her name was on the list. In the email, Ms. Litera stated that the female student told Ms. Litera that she was afraid of B.J. Ms. Litera also noticed that B.J.'s hands were shaking. A copy of this email is attached to my affidavit as Exhibit 4.

21. B.J. was transported from the high school to St. Vincent's Hospital by ambulance for a psychiatric evaluation.

22. The next day, on September 8, 2010, I was informed by Espanola High School Assistant Principal Reuben Salazar that his daughter received phone calls from B.J. the night before asking that she come and pick him up from the hospital.

23.   I also spoke to Mr. Salazar's daughter who confirmed that B.J. had called her from the hospital the night before asking for a ride home.  She described B.J. as sounding "distant" on the telephone.

24.   I knew from previous conversations with fellow Assistant Principal Reuben Salazar that his daughter was dating B.J.

25.   I became concerned that B.J. was attempting to leave the hospital without permission since I knew that a minor could not be released into the care of another minor.

26.   I attempted to ascertain the whereabouts of B.J. because I was concerned for the safety of the fellow students named in his writings and drawings.

27.   I was contacted by the Assistant Superintendent Dr. Trujillo; he told me that Assistant Principal Mr. Salazar had contacted him to express his fear, as well as the fear of others at the high school, that B.J. would come to the school and act out what he had written and drawn.

28.   Based on the foregoing, I believed I had probable cause to arrest B.J.  I also believed his arrest was necessary to protect the public.

29.   On September 8, 2010, I prepared the Criminal Complaint and Statement of Probable Cause attached to my affidavit as Exhibit 5.

30.   That same day, I spoke to Juvenile Probation Officer Martha Fernandez at the Espanola Probation Office and requested permission to arrest B.J. so he could receive a psychiatric court ordered evaluation.  Ms. Fernandez approved the immediate detention of B.J.

31.    I then asked Espanola Police Office Richard Gallegos to make contact with the Ohkay Owingeh Police Department and ask permission to go to B.J.'s residence in Ohkay Owingeh Pueblo to arrest B.J.

32.    On September 9, 2010, B.J. had still not been located I arrived at Espanola Valley High School.  A fire alarm went off and the fire department was called.

33.    At about this same time, I was informed that an anonymous caller had called the High School switchboard and stated that there was a student on campus with a black handgun in his backpack.

34.    I began searching the high school when I was notified by Richard Gallegos that he had information at to B.J.'s whereabouts.  I instructed Sgt. Gallegos to arrest B.J.

35.    A short time later, I was told by Sgt. Gallegos that B.J. had been arrested at a medical center located in Espanola.

Christian Lopez

Subscribed and Sworn to before me this ___8th___ day of ~~October~~, 2012, by Christian Lopez.
                                                            November

My commission expires:

Notary Public

OFFICIAL SEAL
MICHELE M. CATANACH
Notary Public
State of New Mexico
My Comm. Expires 10-19-13

# List for Hell

1. Pink whore
2. Special Blonde
3. Fat ASS
3. ChrisD
4. Chriss
5. Austin

CONFIDENTIAL

EXHIBIT 1
to Affidavit
of C. Lopez

CONFIDENTIAL

9. Chris

1. Andria
2. Krystal
3. Alex
4. Mario
5. Dustin
6. Roberto
7. Rosa
8. Alexandria

10. 1 girl

11. 1 boy

1.

12. 2 girl

13

Chris D. Trujillo

TJ and CJ v. Pacheco et. al., 12-CV-565 000072

List

No#5

CONFIDENTIAL

1. Nathan
2. Austin
3. Dustin
4. Rosa
5. Megan
6. Jaymes
7. Kayca

CONFIDENTIAL





CONFIDENTIAL

TJ and CJ v. Pacheco et. al. 12-CV-565 000012

CONFIDENTIAL

TJ and CJ v. Pacheco et al., 12-CV-565 000013



TJ and CJ v. Pacheco et. al., 12-CV-565 000014

CONFIDENTIAL