IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

T.J. and C.J., on behalf of their
minor child B.J.,

                        Plaintiffs,

    vs.                                      CIVIL NO.  12-565 RB/LFG

DANNY PACHECO, Sergeant,
RICHARD GALLEGOS, and
Lieutenant CHRISTIAN LOPEZ,
all City of Española Police Officers;
and CITY OF ESPAÑOLA,

                      Defendants.

## MEMORANDUM OPINION AND ORDER
### DENYING PLAINTIFFS' MOTION FOR LIMITED DISCOVERY

THIS MATTER is before the Court on "Plaintiff's Motion for Limited Discovery Pursuant to Federal Rule 56(d)(2) [Doc. 36].  The Court considered the motion and attached exhibits, which include a Rule 56(d) Affidavit of Joseph P. Kennedy [Doc. 36-5], Defendants' Response in opposition [Doc. 39], and Plaintiffs' Reply [Doc. 40].  Pursuant to D.N.M.LR-Civ. 7.6(a), motions are generally resolved on the submissions and without oral argument.  Accordingly, this motion is decided on the parties' submissions.

### Nature of Case

Plaintiffs prosecute this case on behalf of the minor, B.J., contending that his common law and constitutional rights were violated by Defendants.  They bring this action pursuant to the New Mexico State Tort Claims Act, §§ 41-4-1, *et seq.*, and 42 U.S.C. § 1983.  [Doc. 1, Ex. 1.] Defendants  moved for summary judgment based on qualified immunity as to Count One of Plaintiffs' Complaint. [Doc. 27.]  Count One of Plaintiffs' Complaint asserts claims of "Fourth Amendment violations: Unlawful

Arrest, Unlawful Seizure and Excessive Force" against the individual Defendant police officers – Lt. Christian Lopez., Sgt. Richard Gallegos, and Officer Danny Pacheco. [Doc. 1, Ex. 1, at 7.]

In the qualified immunity motion, Defendants assert that they reasonably believed their actions were lawful in light of clearly established law and based on all the information available at the time of arrest. Thus, they contend they are immune from liability. The Court stayed discovery pending a ruling on Defendants' qualified immunity motion. Plaintiffs argue that they cannot respond adequately to the motion without specific additional discovery. The proposed discovery requests are discussed below.

## **Background**

The Complaint, Answer, Joint Status Report and motion practice all supply portions of the parties' allegations. In January 2010, B.J. was on a school bus when another minor student, K.A., began kicking and punching the seat in which B.J. was sitting, and then began to kick and punch B.J. Plaintiffs contend that school administrators and law enforcement officers knew or should have known that bullies like K.A. posed an unreasonable risk of harm to students, including B.J., but they failed to take action to protect B.J. [*See, e.g.,* Doc. 11, at 2-3.]

On September 7, 2010, after a student alerted school authorities that B.J. made a threat against her, B.J. was taken to the school principal's office where he and his backpack were searched. During the course of the search, writings and drawings were found. [*See* Docs. 1, 11.]

Plaintiffs and Defendants differ in their descriptions of the contents of B.J.'s belongings. Plaintiffs claim that what was found was nothing more than the outlines of a movie idea which B.J. wanted to write and produce. A sheet of paper captioned "list for hell" was found. This list had the names and/or descriptions of fellow students. Also found were drawings of individuals being stabbed or bludgeoned and lying in a pool of blood, and cemetery headstones showing names of students.

2

Plaintiffs claim this was a "story board" for a movie – nothing more. [*See* Doc. 36, Ex. 1.] Defendants, on the other hand, contend that the "list for hell" was a "hit list" of students and alleged antagonists that B.J. identified for physical retribution, including assault and/or death. [*See* Doc. 11.]

Española police were informed of a threat and of the discovery of a "hit list" of students; and, on September 7, 2010, Española  Police Lt. Christian Lopez responded to the call at the high school. [Doc. 36, Ex. 1, at 1.] Lt. Lopez met with a School Resources Officer, the Assistant Principal, a School Psychologist, a School Security officer and B.J.  Lt. Lopez was shown the list of names and drawings that were found in B.J.'s backpack, and interviewed B.J. in the presence of the School Administrators. [Id.]

B.J.'s mother was summoned to the school during B.J.'s interview with school administrators and Lt. Lopez, and was present for portions of the interview.  She is alleged to have reported that her son, B.J., had violent tendencies and recently assaulted her by choking and striking her.  She is also alleged to have displayed bruises received during an altercation with B.J.  In addition, B.J.'s mother stated that, from time to time, she was afraid of her son's violent outbursts. [*See* Doc. 39, Ex. D.]

The pleadings indicate that school administrators and law enforcement officers sought the mother's permission to have a mental health evaluation conducted.  During conversations with school administrators and Lt. Lopez, B.J. allegedly made statements indicating that he had entertained suicidal tendencies, or that he believed sometimes [suicide] was the "only way out." [Doc. 36, Ex. 1, at 4.] When asked if B.J. thought he could hurt someone else or someone on the list, he stated he did not know.  [Id.]  Because of the concern for B.J.'s safety, and that of others, including his mother, arrangements were made for a psychiatric evaluation at Christus St. Vincent's Hospital ("St. Vincent's").  [Id.]

3

B.J. was taken via ambulance to a child psychiatric unit at St. Vincent's, but, subsequently, Lt. Lopez heard that B.J. had "escaped" from St. Vincent's and that his whereabouts were unknown. [Id.] Lt. Lopez later heard that B.J. called his girlfriend, informing her that he was released and needed a ride home. The girlfriend did not pick up B.J. but told her father of the call. Lt. Lopez also heard, at some point, that B.J.'s mother picked up her son from Santa Fe and had him with her.

According to Lt. Lopez, he was concerned that B.J. was attempting to leave St. Vincent's without authorization. Plaintiffs dispute this contention and state that B.J. was discharged from the hospital without a finding that he posed a danger. [*See, e.g.,* Docs. 11, 39, Ex. D.]

The pleadings show that police also had a note, dated in March 2010, from B.J.'s classmate that stated B.J. was threatening the classmate and telling her that he was going to kill her and that she was on his "hit list." The note further stated that B.J. was going to bring a knife or gun to school, and was going to kill this student. The note concludes by stating the student was afraid and wanted to stop these threats. [Doc. 39, Ex. C.]

Based on the representations of B.J.'s unknown whereabouts and out of concern that B.J. would return to the school to engage in the conduct depicted in his notes and drawings or follow through with his threat to kill a classmate, Lt. Lopez believed he had probable cause to arrest B.J. He prepared a criminal complaint and statement of probable cause. Lt. Lopez then spoke to juvenile probation officer Martha Fernandez at the Española Probation Office and requested permission to arrest B.J.[1] [Doc. 39, Ex. C.] The probation officer authorized the arrest. [Id.]

Contact was also made with the Ohkay Owingeh Police Department to get permission to go to B.J.'s residence located in Indian Country on the Ohkay Owingeh Pueblo to effect the arrest. The

---

[1]There is no indication why B.J. had a juvenile probation officer.

Ohkay Owingeh Tribal Court granted permission and signed a written authorization to arrest B.J. Sergeant Richard Gallegos of Española Police Department, accompanied by tribal police escort, went to B.J.'s home on the Pueblo, but no one answered.  Thus, B.J. was not arrested at that time. [*See* Doc. 40.]

On September 9, 2010, after B.J. was no longer at the child psychiatric unit, but before his whereabouts were known to police, a fire alarm was activated at the Española Valley School.  When Lt. Lopez arrived, he learned that an anonymous call was placed to the high school switchboard, and the caller stated there was a student on campus with a black handgun in his backpack.  [Doc. 39, Ex. E.] Lt. Lopez began searching the high school.  Sgt. Gallegos notified Lt. Lopez that Gallegos had learned that B.J. was at a mental health center located in Española.  Lt. Lopez instructed Sgt. Gallegos to arrest B.J.  The Sergeant located B.J. at the Presbyterian Center, handcuffed B.J., and took B.J. into custody.  According to Defendants,, Sgt. Gallegos relied on Lt. Lopez's statement of probable cause and the criminal complaint in arresting B.J.  The criminal complaint was given to the District Attorney, but, ultimately, the Assistant District Attorney dismissed the criminal complaint. [*See* Doc. 40.]

## Rule 56(d) Affidavit

The defense of qualified immunity not only shields governmental employees who perform discretionary functions from liability, but also protects them from the burdens of trial, including discovery.  Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004); Workman v. Jordan, 958 F.2d 332, 336 (10th Cir. 1992) ("we reiterate that qualified immunity is not only a defense to liability but also entitlement to immunity from suit and other demands of litigation") (*citing* Siegert v. Gilley, 500 U.S. 226 (1991)).  Supreme Court and Circuit precedent make clear that when governmental employees file a motion based on qualified immunity, all discovery should be stayed pending the

court's consideration and disposition of the motion.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Jiron</u>, 392

F.3d at 414.  The failure to stay discovery robs the defendant of the very benefit of the immunity

defense.

There exists, however, a narrow exception to the discovery stay.  When a party or counsel

contends that limited discovery is necessary to allow it to respond to the pending motion, they are

privileged to file a Fed. R. Civ. P. 56(d) motion and affidavit:

> "A party seeking to defer ruling on summary judgment under Rule
> 56(f) must 'file an affidavit that explain[s] why facts precluding
> summary judgment cannot be presented.  This includes identifying the
> probable facts not available and what steps have been taken to obtain
> these facts.'"  <u>Libertarian Party of New Mexico v. Herrera</u>, 506 F.3d
> 1303, 1308 (10th Cir. 2007) (*quoting* <u>Trask v. Franco</u>, 446 F.3d 1036,
> 1042 (10th Cir. 2006)).
>
> A party may not invoke Rule 56(f) "by simply stating that discovery
> is incomplete but must 'state with specificity how the additional
> material will rebut the summary judgment motion.'"  <u>Ben Ezra,
> Weinstein, & Co. v. Am. Online, Inc.</u>, 206 F.3d 980, 987 (10th Cir.
> 2000).

<u>Garcia v. U.S. Air Force</u>, 533 F.3d 1170, 1179 (10th Cir. 2008).

## **Present Motion and Briefing**

Plaintiffs contend that specific information is necessary to allow them to adequately contest

the qualified immunity motion.  They seek to take short depositions of Officer Danny Pacheco, Lt.

Lopez, Assistant District Attorneys ("ADA") Sarah Piltch and Pacheco, and "a representative from

St. Vincent's to testify how an office [sic] could discover medical status [information]. . . ."[2]

---

[2]Plaintiffs' Motion for Limited Discovery is somewhat confusing.  Plaintiffs argue that they seek a
deposition of the psychiatrist who evaluated and released B.J. [Doc. 36, at 4.] But, counsel's Rule 56(d) affidavit
[Ex. E] does not request a psychiatrist's deposition.  Moreover, one portion of the argument merely asks for the
deposition of a St. Vincent's representative, not of a psychiatrist. [Doc. 36, at 5.] The reply [Doc. 40] also
requests a deposition of a St. Vincent's representative, not of a psychiatrist.

Plaintiffs' counsel's Rule 56(d) affidavit argues that Lt. Lopez's affidavits assert "three factual areas as support for his belief that B.J. had committed the crimes of attempted murder and assault that [counsel] believe[s] call for discovery to develop facts to offer in response." [Doc. 36, Ex. 5, ¶ 3.] The Court addresses four areas below, although some of the areas of inquiry may overlap.

      *(1)*     *St. Vincent's Information about B.J.:*

Specifically, Plaintiffs state that "the ability and willingness of St. Vincent's to cooperate with law enforcement objectives of protecting the public is relevant to Defendant Lopez's ability to dispel any fears of B.J.'s escape from a mental health care facility . . . ." Thus, Plaintiffs seek information as to what action Lt. Lopez took to inquire into B.J.'s mental health status as determined by the psychiatric hospital. For example, Plaintiffs wish to discover whether Lt. Lopez called St. Vincent's and talked to anyone about B.J.'s mental status. [Id., ¶ 5.] Plaintiffs also state they wish to depose the psychiatrist who evaluated and released B.J. to confirm that the psychiatrist would have told Lt. Lopez that B.J. was not a threat to anyone. [Doc. 36, at 4.]

Defendants argue that Plaintiffs need not depose Lt. Lopez about this matter because Lt. Lopez already responded to interrogatories that he did not take any such actions, *i.e.,* contacting St. Vincent's about B.J.'s mental health status. [Doc. 39, at 2.] Defendants contend that Plaintiffs are free to argue that such inaction by Lt. Lopez negates arguable probable cause, but that there is no need for a deposition on this question. Moreover, Defendants state that Plaintiffs may obtain an affidavit from St. Vincent's staff or psychiatrists for purposes of showing how a law enforcement officer might obtain such information from the hospital.

      *(2)*     *Lt. Lopez's Belief re: B.J.'s Discharge from Hospital*:

Plaintiffs contend they also have the right to ask Lt. Lopez about the basis of his belief "on discharge of minors, and whether he had available to him resources such as a telephone so as to call

St. Vincent's to determine the mental health status of [B.J.]." [Doc. 36, at 4.] Plaintiffs appear to question how an officer could have discovered whether a patient escaped from the hospital. This matter is somewhat related to the above-described area of inquiry.

Defendants argue that Plaintiffs seek this type of information because Lt. Lopez's stated he heard B.J. was calling his girlfriend for a ride home from the hospital.  Lt. Lopez testified in his affidavit that he was concerned if a minor was attempting to leave St. Vincent's by contacting another minor to pick him up.  Lt. Lopez further stated he believed that a minor could not be legally discharged from a hospital into the care of another minor. [Doc. 39, Ex. C, ¶ 25.]

Defendants contend that it is unnecessary to depose Lt. Lopez regarding this matter because Plaintiffs failed to specify the factual information they hoped to gain by such a deposition.  If Plaintiffs contend that a minor can be released from a hospital into the care of another minor, Defendants suggest Plaintiffs obtain an affidavit from a St. Vincent's representative to challenge Lt. Lopez's belief.  Defendants assert that the basis for Lt. Lopez's belief about the discharge of minors is irrelevant.

     *(3)*    ***Date and Circumstances re: March 2, 2010 Student Note:***

Plaintiffs argue that they were only made aware of Lt. Lopez's alleged reliance on the March 2, 2010 submitted by student S.M., when Defendants filed their summary judgment motion.  In other words, Lt. Lopez made no mention of the March 2010 note in his detailed narrative report about the arrest of B.J.  Plaintiffs assert it is essential that they be allowed to depose Lt. Lopez and Officer Pacheco about this student complaint so as to learn when the complaint was written and whether Pacheco investigated the allegation when it was raised, earlier in 2010. [Doc. 36, at 6.] Plaintiffs also seek to confirm under oath if the March 2, 2010 note related to an incident occurring at Española Military Academy as opposed to Española  High School, whether Officer Pacheco saw no threat to

the student who wrote the note, and why the note was produced after Lt. Lopez completed his narrative report on November 24, 2010.   Plaintiffs further argue that such facts, depending on what is discovered, "tend to diminish or completely eliminate any reliance on the March 2, 2010 note as a basis to believe that B.J. committed a crime on September 7, 2010."   [Doc. 36, Ex. 5, ¶ 4.]

Defendants note that Assistant Principal Devanna Ortega provided affidavit testimony that prior to B.J.'s arrest in September 2010, she gave a copy of the March 2, 2010 to Lt. Lopez. [Doc. 39, Ex. D, ¶ 19.] In his affidavit, Lt. Lopez acknowledged receipt of the handwritten note.  Defendants or affiants never claimed the note was written at any time other than March 2010, as dated.  The evidence of record demonstrates the assistant principal gave the note to Lt. Lopez before B.J.'s arrest, and Defendants assert that there is affidavit testimony in the record concerning how Defendants obtained the note.  Defendants urge that Plaintiffs are free to argue the importance of Lt. Lopez's failure to mention the note in his report.  In addition, Defendants state that it is immaterial if the note was written by a student at a former high school attended by B.J.  The material fact is that Lt. Lopez had the threatening note before the arrest of B.J. [Doc. 39, 4-5.] Defendants also argue that Officer Pacheco's involvement with or investigation of the March 2010 note is irrelevant and not material to the matters before the Court because Pacheco had no role in the decision to arrest B.J.

### (4)      *District Attorney's Decision not to Charge B.J.:*

Plaintiffs contend that news reports detailed that the District Attorney dismissed charges against B.J. upon the State's review of the police reports and that ADA Pacheco was quoted in the news media stating there was no probable cause.  Plaintiffs contend they need sworn testimony under oath as to "the lack of probable cause."  Plaintiffs rely on a Juvenile Disposition Sheet, signed by ADA Sarah Piltch, noting "insufficient evidence" as the reason for rejecting the charge. [Doc. 36, Ex. 4.]

9

Plaintiffs further assert that Plaintiff's counsel has a reasonable basis to believe that one or both ADAs told Lt. Lopez there was no probable cause to arrest B.J. prior to his arrest. [Doc. 36, Ex. 5, ¶ 6.]

Defendants acknowledge that the District Attorney did not charge B.J. with a crime, but contend Plaintiffs failed to specify what additional testimony, relevant to qualified immunity, they will garner by deposing the two ADAs. Defendants suggest that Plaintiffs can seek such information through interviews with non-parties or present such evidence through affidavits.

Defendants clarify, however, that they dispute the allegation that an ADA informed Lt. Lopez, prior to B.J.'s arrest, that there was no probable cause to arrest B.J. Defendants argue that Plaintiffs provided no evidence in support of counsel's belief that this occurred.

Plaintiffs characterize this case as revolving around "the arrest, eventual shackling and prolonged detention of a minor child whom the defendants charged with attempted murder." [Doc. 40, at 2.] They urge that the proposed depositions must be taken as this information is "uniquely in the control of Defendant Lopez" or other witnesses and "bears directly on the question of whether a reasonable police officer would believe B.J. committed a criminal offense of attempted murder." [Doc. 40, at 3.] Plaintiffs then list verbatim twenty (20) of Defendants' proposed undisputed facts in the qualified immunity motion that Plaintiffs believe "could be controverted by additional discovery." [Doc. 40, at 3-5.] Plaintiffs do not explain how the additional discovery might controvert each or any of the 20 proposed undisputed facts. Plaintiffs argue that there is no way to know with certainty what an officer knows or does not know without a deposition. In addition, Plaintiffs contend that they cannot obtain affidavit testimony from various witnesses as suggested by Defendants either because such witnesses are in the control of Defendants or such possible affidavit statements are "an uncertain proposition." [Doc. 40, at 5.]

The Court must decide whether Plaintiffs sufficiently explained in their Rule 56(d) affidavit why facts precluding summary judgment cannot be presented in their response to the qualified immunity motion.  The Court similarly determines if Plaintiffs "state[d] with specificity how the additional material will rebut the summary judgment motion."

## Analysis

Defendants' motion seeks qualified immunity on the Count One claims only – alleged Fourth Amendment violations - unlawful arrest and seizure and excessive force.  Thus, the Court narrows its focus, regarding the motion for limited discovery, to Fourth Amendment law and the pertinent legal standards relating to probable cause for warrantless arrests.

Plaintiffs assert that Defendant officers arrested B.J. without probable cause, or that there was an unlawful arrest and seizure.  "Probable cause to arrest exists, where, under the totality of the circumstances, a reasonable person would believe that an offense has been committed by the person arrested."  Morris v. Noe, 672 F.3d 1185, 1192 (10th Cir. 2012) (*citing* United States v. Martin, 613 F.3d 1295, 1302 (10th Cir. 2010)).  Stated differently,

> As a general rule, a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime." *See* Beck v. Ohio, 379 U.S. 89, 91 (1964).   Probable cause means the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."   Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).

Williams v. Cambridge Bd. of Educ., 370 F.3d 630, 636 (6th Cir. 2004).  Once an officer has probable cause, he or she has no duty to investigate further or seek additional exculpatory evidence.  Nor is the officer under an obligation to give credence to the suspect's story or explanation.  Id. at 637 (citation

omitted).  However, a mere suspicion of criminality is insufficient.  Thus, the officers examine the totality of evidence <u>known to them</u> when determining probable cause.  <u>Id.</u> (emphasis added).

With respect to probable cause determinations, the Tenth Circuit Court of Appeals provided the following guidance:

> "Probable cause exists if facts and circumstances <u>within the arresting officer's knowledge and of which he or she has reasonably trustworthy information</u> are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." [<u>Romero v. Fay</u>, 45 F.3d 1472, 1476 (10th Cir.1995)] (*quoting* <u>Jones v. City & County of Denver</u>, 854 F.2d 1206, 1210 (10th Cir.1988)).

<u>Olsen v. Layton Hills Mall</u>, 312 F.3d 1304, 1312 (10th Cir. 2002) (emphasis added).

In other words, the probable cause inquiry is an objective one.  <u>Morris</u>, 672 F.3d at 1192.  "An arrest is not invalid under the Fourth Amendment simply because the police officer subjectively intended to base the arrest on an offense for which probable cause is lacking, so long as 'the circumstances, viewed objectively, justify' the arrest."  <u>Id.</u> at 1192-93 (citations omitted).  An arrest is lawful as long as probable cause exists for *some* offense.  <u>Id.</u> at 1193 (emphasis in original).

In addition, the Tenth Circuit advises that the court  evaluates the reasonableness of a police officer's actions "from the perspective of a reasonable officer on the scene, recognizing the police officer may have been forced to make split-second decisions in a stressful, dynamic, and dangerous environment."  <u>Lundstrom v. Romero</u>, 616 F.3d 1108, 1119-20 (10th Cir. 2010) (citation omitted), and not from the clarity of 20/20 hindsight.  Moreover, if a law enforcement officer reasonably, *albeit* mistakenly, concludes that probable case is present, he or she still may be entitled to qualified immunity.  <u>Morris</u>, 672 F.3d at 1194.[3]  *See, e.g.,* <u>Ashcroft v. al-Kidd</u>, 563 U.S. ——, ——, 131 S.Ct.

---

[3]In <u>Morris</u>, the Tenth Circuit ultimately decided that the defendant officer could not have reasonably believed probable cause existed to arrest the suspect (plaintiff).  That was true because a reasonable officer would have known that the offense of assault required at least some attempt to use "force or violence" to cause harm to another, and Morris exhibited no signs of violence.  <u>Id.</u> at 1194.

2074, 2085 (2011) (qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments."); Koch v. City of Del City, 660 F.3d 1228, 1241 (10th Cir. 2011) ("[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.") (citation omitted), *cert. denied,* 133 S.Ct. 211 (2012).  In addition, the fact that a suspect is not eventually charged with a crime or that the State elects not to prosecute an individual who was arrested with probable cause does not invalidate the probable cause or change matters.  *See, e.g.,* Wilder v. Turner, 490 F.3d 810, 814-15 (10th Cir. 2007) ("Since probable cause for a warrantless arrest is determined in terms of the circumstances confronting the arresting officer at the time of the seizure, the validity of such an arrest is not undermined by subsequent events in the suspect's criminal prosecution such as dismissal of charges.") (citation omitted), *cert. denied,* 552 U.S. 1181 (2008); Williams, 370 F.3d at 638 (citations omitted) (same).

Moreover, a prosecutor may well believe while there is "probable cause" for an arrest, the evidence available may not rise to the "beyond a reasonable doubt" standard for obtaining a conviction, and thereby dismissing the complaint.  Thus, the dismissal of the case does not necessarily mean that probable cause for the arrest or initiation of criminal proceedings was lacking.

In determining whether Plaintiffs required additional discovery to respond to the qualified immunity motion, the key questions are **not** whether B.J. actually made threats, whether B.J.  intended to act on the threats, whether Defendant officers ultimately were mistaken about B.J., whether Defendant officers could have conducted a more thorough investigation, or why the State dismissed charges against B.J.  The critical inquiry in deciding Plaintiffs' request for additional discovery to respond to the qualified immunity motion is whether Defendant officers had probable cause to believe B.J. made threats to the safety of others or whether officers believed he would cause serious physical

harm to himself or others.  Accordingly, the Court evaluates the Rule 56(d) affidavit with these principles and questions in mind.

Plaintiffs' request for discovery for the above-stated purposes is misplaced.  In determining if officers had probable cause for the arrest, the inquiry focuses on what information the officers had at that time.  Lt. Lopez saw that B.J. created notes, drawings, and lists of students indicative of possible violent action either towards B.J. himself or other students.  Lt. Lopez and officers learned that fellow classmates reported concerns about B.J.; one concerned student's name appeared on B.J.'s "list for hell," and on B.J.'s sketch of a tombstone.  Lt. Lopez knew B.J. was not certain whether he might cause harm to himself or others, Lt. Lopez heard B.J.'s mother describe her son as having physically assaulted her and saw bruises on B.J.'s mother, and he heard about B.J.'s mother feared her son's violence at times.  Other information available to Lt. Lopez before B.J.'s arrest was that B.J. was taken for a psychiatric evaluation to St. Vincent's by ambulance the same day B.J.'s backpack was searched and that there was information B.J. attempted to arrange to have his girlfriend pick him up at the hospital.

Whether correct or not, Lt. Lopez believed that B.J. could not be released into the care of another minor after the psychiatric evaluation at St. Vincent's.  For a short period, Lt. Lopez did not know the whereabouts of B.J.  During that same time frame, Lt. Lopez learned of an anonymous call to the same school indicating that a student, with a gun in a backpack, was going to or was at the school.  In addition, whether Lt. Lopez relied on the March 2010 note or not in directing the arrest of B.J., he had the note in his possession and it concerned allegations by yet another student that B.J. might be violent or had caused that student to be fearful earlier in the year.

None of Plaintiffs' requested discovery challenges the information that police officers already had available to them before B.J.'s arrest.  Nor do Plaintiffs seek information from discovery that is

relevant to a proper evaluation of Defendants' conduct for purposes of qualified immunity. The facts subsequently learned by law enforcement do not figure into the information then and there known to law enforcement.

Citizens and law enforcement officers alike are acutely aware of the horrific circumstances that can occur in mass school shootings. The police are not required to wait for a tragedy to occur before they intervene. What the officers knew before B.J.'s arrest, viewed in the context of quickly evolving, stressful and dangerous environments where police officers have to make split-second decisions, is the critical information they had at the time, rather than information officers may subsequently learn.

In Armijo v. Peterson, 601 F.3d 1065 (10th Cir. 2010), cert. denied, 131 S.Ct. 1473 (2011), our own circuit indicated that police find themselves between a rock and a hard place in circumstances similar to those at issue in this case. In Armijo, the Tenth Circuit reversed the District Court's denial of qualified immunity to defendant officers, finding that exigent circumstances existed to justify a warrantless home entry and the detention of an individual believed to have made threats, when the officers reasonably believed that a suspended student might immediately cause harm to others, specifically, students at Oñate High. That case involved a threatened school shooting at Oñate High School in Las Cruces, New Mexico. There were reports of proposed bomb threats and a gun fight at the high school Id. at 1071-72. This occurred after the rival gangs engaged in a fight, and the threats for retribution were allegedly made by one gang member.

The bomb threats were actually called in, and officers elected to lock down the school rather than evacuating it. The Court noted that the decision to lock down the school and expose students to a bomb, or to evacuate the school, possibly sending the staff and students into gunfire placed the

officers "between a rock and a hard place."  Id. at 1071.[4]  However, the officers were called upon to make an "on-the-ground risk assessment and a split-second judgment call" and entered a home without a warrant, detained and handcuffed an individual.  Subsequent investigation confirmed that the detained individual had not been suspended, was not a gang member, and had not called in the bomb threats.  In dismissing his lawsuit which alleged 4th Amendment violations, the circuit said it would not second-guess the officers' and noted that "[r]easonable belief does not require absolute certainty . . . ."  Id. at 1071-72 (citation omitted).

<u>**Conclusion**</u>

Here, with respect to Plaintiffs' request for limited discovery, the Court concludes that Plaintiffs seek information to second-guess police officers' "split-second judgment call."  This will not assist them in attempting to defeat summary judgment on the Fourth Amendment claims. Moreover, Plaintiffs' Rule 56(d) affidavit fails to identify the probable facts not available and what steps they already took to obtain those purported facts.  While they argue that obtaining certain affidavits, as suggested, is an "uncertain proposition," they do not state what steps they attempted to obtain the information they seek.  In addition, while listing 20 of Defendants' proposed undisputed material facts from the qualified immunity motion, Plaintiffs' Rule 56(d) affidavit did not state with specificity how the additional material could rebut the summary judgment motion.  *See* Ben Ezra, 206 F.3d at 987.  Thus, the Court denies Plaintiffs' request for limited discovery in order to respond to the qualified immunity motion.  Plaintiffs are now required to submit their response to the motion by no later than March 22, 2013.

IT IS SO ORDERED.

---

[4]Such fear is not without basis.  In Jonesville, Arkansas, two students triggered a fire alarm and shot 5 students and a teacher who were evacuating from the school due to the alarm.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge