IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

T.J. and C.J., on behalf of their
minor child B.J.,

       Plaintiffs,

vs.                                               Case 1:12-cv-00565-RB-LFG

DANNY PACHECO, Sergeant,
RICHARD GALLEGOS, and
Lieutenant CHRISTIAN LOPEZ,
all City of Española Police Officers;
and CITY OF ESPAÑOLA,

       Defendants.

**<u>PLAINTIFFS' OBJECTIONS TO MEMORANDUM OPINION AND ORDER OF
MAGISTRATE JUDGE DENYING PLAINTIFFS' MOTION FOR LIMITED
DISCOVERY [DOCUMENT 42].</u>**

COME NOW Plaintiffs, pursuant to Federal Rules of Civil Procedure 72(a), 6(d) and

5(b)(2)(E), and hereby serve their objections to Magistrate Judge Lorenzo Garcia's

Memorandum Opinion and Order Denying Plaintiffs' Motion for Limited Discovery [Document

42] entered on March 7, 2013 in this matter.  As grounds for their motion Plaintiffs state:

### I.  <u>BACKGROUND</u>

Plaintiffs were served with an Order staying discovery in this case on November 14, 2012

[Document 30] until a ruling was entered on Defendants' motion for summary judgment based

on qualified immunity or on Plaintiff's Rule 56(d) request for limited discovery of material

witnesses and individual defendant officers.  Plaintiffs thereafter filed their Motion for Limited

Discovery Pursuant to Federal Rule 56(d)(2) to which a response was entered and for which a

reply was later entered.  Documents 36, 39 and 40.  This Court, through Magistrate Judge

Lorenzo Garcia, denied Plaintiffs Motion by Memorandum Opinion and Order [Document 42] on March 7, 2013.

Plaintiff alleges that Plaintiffs' motion for limited discovery was denied on grounds that do not comport with the standards pertaining to Rule 56(d)(2) as announced by the Tenth Circuit. The Court first outlines the test to be applied to Plaintiffs' Motion as an objective one under the qualified immunity standards as they relate to the Fourth Amendment.  However, the Court then indicates that it is the subjective beliefs of the officers involved at the time of the alleged constitutional violation was committed that matter, and that the subject of Plaintiffs' requested discovery was not sufficiently related to those subjective beliefs of the Defendants prior to their arrest of B.J. The Court later contradicts that position by enunciating the objective standard first announced by *Graham v. Connor*, 490 U.S. 386, 396-7 (1989), but by simultaneously inserting into that statement implications of the subjective fear Defendants might have had based on events that had not even occurred at the time of the events that gave rise to this case. Document 42 at 15 of 17. The Court states "[c]itizens and law enforcement officers alike are acutely aware of the horrific circumstances that can occur in mass school shootings. The police are not required to wait for a tragedy to occur before they intervene. **What the officers knew** [(not subjectively believed)] before B.J.'s arrest, viewed in the context of quickly evolving, stressful and dangerous environments where police officers have to make split-second decisions, is the critical information they had at the time, rather than information officers may subsequently learn." *Id.*

As Plaintiffs will explain, the Court misapprehends Plaintiffs' claims.  Plaintiffs do not claim that officers should not have acted, Plaintiffs' claim that the decision to charge B.J. with attempted murder deprive him of his Fourth Amendment rights.  Plaintiffs need discovery to show that the contours of B.J.'s right to be free of arrest without probable cause was clear to any

reasonable police officer in New Mexico.  The officers had tools available to them to protect the

public other than the felony arrest of a juvenile. Certainly, recent events at Sandy Hook and now

historical events such as Columbine are etched in the minds of the collective conscience.

However, we do not have a Constitution that fears a category of people, such as mentally

disturbed teenagers.  No, we have a Constitution that protects mentally disturbed teenagers to

assure that our fears do not overwhelm our rights.

Judge Garcia appears to have preliminary determined the merits of the qualified

immunity defense.  However, even a first glance look at qualified immunity should not

determine whether a Plaintiff confronting sworn affidavits gets to test the affidavits through

cross-examination.  The Court's action of denying Plaintiffs' motion under Rule 56(d)(2)

effectively denies plaintiffs claiming violations of the Fourth Amendment the opportunity to take

a limited deposition of the state actors involved in an alleged violation.

Plaintiffs contend that the Court deviated from its duties under the federal rules of civil

procedure and under the law as it applies to seeking additional discovery and that this deviation,

in part, is premised upon Judge Garcia's own judicial view of Plaintiffs' claim and the qualified

immunity defense .  Properly supported requests for discovery are to be treated liberally where a

party offers proof of its need for limited discovery when seeking to fend off a motion for

summary judgment.  It is true that there is a modified standard where qualified immunity is

raised as a defense, but that standard does not require a Plaintiff to abandon the tools of

discovery in reliance on affidavits, especially where that party files a motion in accordance with

the rules of civil procedure and submits the required affidavit.  The crux of Plaintiffs' requests

were directly related to the information known by Defendants when they arrested B.J. without

probable cause and they should not have been denied on the grounds cited by this court.

<u>DISCUSSION OF LEGAL STANDARD</u>

**A) Appealing the decision of a Magistrate Judge on a non-dispositive manner is proper where timely objections are served upon counsel and filed with this Court.**

Under Federal Rule of Civil Procedure 72(a) "[a] party may serve and file objections to the order within 14 days after being served with a copy… [and t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Federal Rule of Civil Procedure 6 controls the timing of motions and provides for additional time to respond where certain forms of service are employed: "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."  FED. R. CIV. P. 6(d).  Federal Rule 5(b)(2)(E) governs documents that are served by electronic means: "[a] paper is served under this rule by… sending it by electronic means if the person consented in writing—in which event service is complete upon transmission.  Therefore, although the enter to which Plaintiffs object was entered on March 7, 2013, this motion is timely if filed on or before March 25, 2013 and the District Judge must, therefore, consider Plaintiffs' objections.  FED. R. CIV. P. 72(a).

The Advisory Committee Notes to Rule 72(a) provide some guidance as to the standard to be applied by the District Judge when reviewing a Magistrate Judges findings:

> Implementing the statutory requirements, the rule requires the district judge to whom the case is assigned to make a de novo determination of those portions of the report, findings, or recommendations to which timely objection is made. The term "de novo" signifies that the magistrate's findings are not protected by the clearly erroneous doctrine, but does not indicate that a second evidentiary hearing is required. *See United States v. Raddatz*, 417 [447] U.S. 667 (1980)[; s]*ee also* Silberman, *Masters and Magistrates Part II: The American Analogue*, 50 N.Y.U. L.REV. 1297, 1367 (1975).

FED. R. CIV. P. 72 (advisory committee note).  There was no hearing held in this matter and one

was not required as pursuant to D.N.M.L.R.-Civ. 7.6(a); however, this Court may review the

facts as they relate to Plaintiffs' motion for limited discovery de novo and is under no

requirement to defer to the Magistrate Judge's findings as would normally be the case under

Federal Rule 52 (bench trials).  In the current instance Plaintiffs object to the Magistrate Judge's

findings as laid out in the Background section of the Memorandum Opinion Order and as

presented in the section entitled Present Motion and Briefing. Document 42 at 2-5; 6-11 of 17.

Therefore, the factual findings as they relate to those sections must be reviewed de novo by the

district court, which may only defer to the Magistrate Judge's findings where no objection is

made.


### B) Standards for Rule 56(d)(2) Motions implicate a more liberal standard than was applied by Magistrate Judge Garcia in this case.

The Tenth Circuit has stated that Harlow v. Fitzgerald, 457 U.S. 800 (1982), makes clear that

"qualified immunity does not shield government officials from all discovery but only from

discovery which is either avoidable or overly broad."  Maxey by Maxey v. Fulton, 890 F.2d 279,

282-83 (10th Cir. 1989).  Also, "when the defendant's immunity claim turns at least partially on a

factual question" the District Court has the power to craft discovery orders "which are narrowly

tailored to uncover only those facts needed to rule on the immunity claim."  Id.  Discovery of

facts needed to rule on a summary judgment motion are neither avoidable or overly broad. Id.

Rule 56(d)(2) states that where a 'non-movant shows by affidavit or declaration that, for

specified reasons, it cannot present facts essential to justify its opposition, the court may allow

time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate

order.  Fed. R. Civ. P. 56(d).  **"Unless dilatory or lacking in merit," a party's rule 56(d)**

**application "should be liberally treated."** Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553–54 (10th Cir.1993) (internal quotation marks omitted). "The general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Price v. W. Res., Inc., 232 F.3d 779, 783 (10th Cir. 2000) (internal quotation marks omitted).

"[I]n response to a summary judgment motion based on qualified immunity, a plaintiff's 56[(d)] affidavit must demonstrate 'how discovery will enable them to' … demonstrate a 'connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion.'" *Id.* (citing *Jones v. City of Denver, Colo.*, 854 F.2d 1206, 1211 (10th Cir. 1988). Thus, "[t]o invoke the shelter that rule 56(d) provides, a party must (i) file an affidavit; (ii) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts; (iii) explain why facts precluding summary judgment cannot be presented; and, (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment. *See,* Martinez v. Lucero, CIV 11–1003 JB/LFG, 2012 WL 2175772, at *16 (D.N.M. May 31, 2012) (Browning, J.) (citations omitted). In other words, in the context of this case Plaintiffs' Motion and affidavit were required to demonstrate what facts were lacking, and how those facts could contradict Defendants' contentions that their arrest of B.J. was objectively reasonable when it was made without probable cause and that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances. Koch v. City of Del City, 660 F.3d 1228, 1241 (10th Cir. 2011).

> When a court permits discovery, the Supreme Court has emphasized that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford–El v. Britton,* 523 U.S. at 598, 118 S.Ct. 1584. "There are, however, exceptions to the rule that no discovery be allowed when government

> officials claim qualified immunity." *Todd v. Montoya,* No. 10–0106, 2011 WL 5238900,
> at *4 (D.N.M. Oct. 4, 2011)(Browning, J.). The officials are not protected from all
> discovery, " 'but only from discovery which is either avoidable or overly broad.' "
> *Garrett v. C.A. Stratman,* 254 F.3d 946, 953 (10th Cir.2001) (quoting *Maxey v. Fulton,*
> 890 F.2d 279, 282 (10th Cir.1989)).

Todd v. Montoya, 877 F. Supp. 2d 1048, 1088 (D.N.M. 2012).


## ANALYSIS

The Magistrate Judge's Opinion appears to reflect a sentiment that Plaintiff's request for

discovery is pointless as the Magistrate Court has decided already that Plaintiffs' claims are

meritless.  In the conclusion of the Memorandum Opinion, Judge Garcia writes that Plaintiffs, in

seeking limited discovery, "were seeking to second guess police officers' split-second judgment

call."  In so doing, the Magistrate Judge has accepted the Defendant Officers' factual proffer that

they were confronted with a "split second decision" that demanded an immediate arrest of a

juvenile.  However, if we were to accept, whole cloth, the reasoning of law enforcement officers

that their "split second" decisions were beyond court review, then indeed every decision would

be couched as "split-second" and there would never be a need for discovery.  In fact, litigation

and discovery is meant in part not just to "second guess" the judgment of the officer, but to place

into dispute the allegation that there was any emergency going on at all.  The case law on

excessive force finds support for the proposition that officers are called upon to make split-

second decisions at times and that courts are to make allowances for these "split-second"

decisions.  However, there is no judicial prohibition against "second guessing" as Judge Garcia

refers to it.  No – civil rights litigation is meant to test the claims of the government that its

officers' decisions were constitutional.  Judge Garcia's disparagement of Plaintiffs' attempt to

engage the process of this Court in an examination of the decision to charge a juvenile with

attempted murder and to place the juvenile in cuffs at the office of a mental health counselor, as

no more than "second-guessing" , is unsupported by the affidavit counsel submitted and unfair to Plaintiffs and counsel. The Magistrate Judge's construct that the officers were confronted with a split second decision shows a lamentable pre-judgment of the facts based solely upon the officers' showing.  With due respect to the Magistrate Judge, Plaintiffs view the facts differently and part of the facts needed to combat the Defendants' desired perception of imminent emergency are within the knowledge of Defendants Lopez and Pacheco.

Counsel's affidavit identified three discrete areas of discovery: 1) the effect if, if any, of the March 2, 2010 note on the decision to charge B.J. with attempted murder; 2) exactly what information Lopez had that lead him to believe that B.J. had "escaped" from St. Vincent's Hospital and what investigation Lopez conducted to determine the truth of what he had heard about any escape or about B.J.'s mental health status; and 3) whether a district attorney told Lopez **before** he arrested B.J. that there was no probable cause to arrest B.J.

The need for discovery in the form of the deposition of Lopez is revealed in the Court's recitation of facts at page 4: "Lieutenant Lopez heard that B.J. had escaped from St. Vincent's and that his whereabouts were unknown".  The Magistrate Judge relied upon an actual factual proffer of the defendants that an officer "heard" something and it appears to be a fact that the Magistrate Judge accepted.  A bare bones affidavit without any type of cross-examination is not the stuff upon which the Courts of this country make decisions.  Plaintiffs' ought not to be forced to accept an assertion that Lopez "heard" something.  Plaintiff's discovery request for a deposition will seek to discover the source and reliability of the information.  Further, contrary to Judge Garcia's contention that "whether the Defendant officers could have conducted a more thorough investigation" is immaterial to a qualified immunity determination, a police officer is not free to ignore reasonably available information prior to making a probable cause

8

determination. <u>Romero v. Fay</u>, 45 F. 3d 1472, 1476, n.2 (10th Cir. 1995). In <u>Baptiste v. J.C.</u>

<u>Penny Co.</u>, 147 F. 3d 1252 (10th Cir.), the Tenth Circuit confronted the issue of whether officers

could rely solely upon the accusation of shoplifting from a store security officer. In <u>Baptiste</u>, the

alleged shoplifting was captured on videotape and available to defendant officers. Because the

incident was captured on video, the Tenth Circuit stated that the appropriate question to ask

related to probable cause was, "whether 'reasonable grounds' existed to believe the shoplifting

allegation made by store security guards in light of the conduct recorded on the videotape; [the

Plaintiffs] explanation" and other exculpatory evidence. <u>Id.</u> at 1275.   The information that

plaintiffs seek of what was readily available to the officers is in the officers' control.

Further, the Magistrate Judge's decision appears imbued with a proposition that the legal

question for the District Court to decide, or "the critical inquiry" as Judge Garcia called it, was

"whether defendant Officer had probable cause to believe that B.J. made threats to the safety of

others or whether officers believed he would cause serious physical harm to himself or others."

Mem. Op. at pp.13-14.  The Court misapprehends the claim presented and thus has misapplied

the law. This litigation challenges the decision to arrest B.J and charge him with attempted

murder and assault.  Plaintiff does not challenge the Defendant Officers' roles as community

caretakers.  The challenge is to the choice of tool they used to deal with a situation confronting

them.  If the Officers were deciding whether B.J. posed a threat to himself or others, they had a

clear tool at their disposal to resolve any such threat.  The New Mexico Children's Code

provides clear direction and authority for a law enforcement to take a child into custody for a

mental health evaluation:

> A. A peace officer may detain and transport a child for emergency mental health
> evaluation and care in the absence of a legally valid order from the court only if the peace
> officer:
> . . .

(2) based upon personal observation and investigation, has reasonable grounds to believe that the child, as a result of a mental disorder, presents a likelihood of serious harm to self or others and that immediate detention is necessary to prevent such harm. The peace officer shall convey the peace officer's beliefs to the admitting physician or licensed psychologist immediately upon the officer's arrival at the evaluation facility;
(3) has certification from a clinician that the child, as a result of a mental disorder, presents a likelihood of serious harm to self or others and that immediate intervention is necessary to prevent the harm;

N.M. Stat. Ann. § 32A-6A-19 (West).

Perhaps, Defendant Lopez had every cause to believe that B.J. was threat to himself or others, as Judge Garcia states.  The tool available to officers is then an emergency mental health evaluation to protect B.J. and the community.  However, a threat to oneself or to others does not a crime make – at least not in this country.  Defendants and Judge Garcia use the specter of school shootings to scare us into believing that we are powerless other than through the felony arrest of a child to protect the community.  We are not powerless – the law gives law enforcement and schools many tools.  Fear mongering is simply going to get us a less robust Constitution, not safety.  Or as Benjamin Franklin state so well:

> Those who would give up essential liberty to purchase a little temporary safety deserve neither liberty nor safety.

In fact, Judge Garcia's framing of the issue tends to show the impropriety of defendants' actions and argues for the need for some limited discovery to present a full clear factual record showing that Defendants had no belief or knowledge that B.J. had actually committed a criminal act.  Plaintiffs have a right to examine the objective reasonableness of the decision to arrest a child for attempted murder.   The attempt to commit any felony requires an overt act toward the commission of the felony.  An "Attempt to commit a felony consists of an overt act in

10

furtherance of and with intent to commit a felony and tending but failing to effect its

commission." N.M. Stat. Ann. § 30-28-1 (West).  Plaintiffs certainly have a right to ask what the

overt act was that lead to the charging.

> Where an attempt to commit a crime is charged, two important elements are essential to
> conviction: a specific intent to commit the crime, and a direct ineffectual act toward its
> commission.

State v. Gillette, 102 N.M. 695, 703, 699 P.2d 626, 634 (Ct. App. 1985)

In New Mexico, an attempt means more than mere preparation and there must be at least

some overt act in order to constitute an attempt even if it is not the last act:

> "In order that there may be an attempt to commit a crime, whether statutory or at
> common law, there must be some overt act in part execution of the intent to commit the
> crime. The act must reach far enough toward the accomplishment of the desired result to
> amount to the commencement of the consummation. It must not be merely preparatory,
> and it need not be the last proximate act to the consummation of the offense attempted to
> be perpetrated. However, it must approach sufficiently near to it to stand either as the first
> or some subsequent step in a direct movement toward the commission of the offense after
> the preparation or solicitation is made. Slight acts done in furtherance of that design will
> constitute an attempt. No definite rule can be laid down by which an act might be
> characterized as overt in any particular case. The general principle of law concerning
> attempts must be applied in each case as nearly as it can with a view to substantial
> justice."

State v. Stettheimer, 94 N.M. 149, 153-54, 607 P.2d 1167, 1171-72 (Ct. App. 1980); quoting
State v. Lopez, 81 N.M. 107, 464 P.2d 23 (Ct.App.1969).

If Plaintiff is not permitted to depose the limited witnesses on the limited issues stated, he

has no ability to show to the Court what evidence was available to the Defendant Officers to

dispel any belief of a criminal act as well prior to the arrest of B.J. The same is true of the facts

that allegedly supported Defendants' probable cause to arrest B.J. while he was engaged in a

counseling session.  Of course, a Rule 56(d)(2) motion does not require that the facts involved be

cast in a light that is favorable to any party in particular, but merely requires the movant to argue

the presence of facts that could be solidified through minimal discovery and swear by affidavit

that those facts would support the movant's position in resisting summary judgment.  In this

instance not only did Plaintiffs make the required factual showing but so too demonstrated how

the facts sought would inform the objective unreasonableness of Defendants' asserted probable

cause to arrest B.J. for attempted murder and aggravated assault.


Respectfully Submitted,


*/s/ Joseph P. Kennedy*
Shannon L. Kennedy
Joseph P. Kennedy
KENNEDY LAW FIRM
1000 2nd St. NW
Albuquerque, New Mexico 87102
(505) 244-1400 (505)244-1406 fax


I hereby certify that a true and correct copy of the foregoing was served upon opposing counsel on the day of its filing via the CME/CF filing system.


*/s/ Joseph P. Kennedy*
Joseph P. Kennedy