**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**Billy Jones,**

**Plaintiff,**

**vs.** **No. 1:12-CV-00565 KG/LFG**

**Danny Pacheco, a City of Espanola Police Officer, and Sergeant Richard Gallegos, a City of Espanola Police Officer, and, Lieutenant Christina Lopez, a City of Espanola Police Officer, Defendant City of Espanola, a municipality,**

**Defendants.**

**AMENDED COMPLAINT FOR RECOVERY OF DAMAGES DUE TO DEPRIVATION OF CIVIL RIGHTS, FALSE IMPRISONMENT, DEFAMATION, AND VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

Plaintiff Billy Jones by and through counsel, The Kennedy Law Firm, brings this complaint pursuant to Section 1983 of the United States Constitution, the Fourth Amendments of the United States Constitution, the New Mexico Tort Claims Act, Title II of the Americans with Disabilities Act and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Billy Jones was attending Espanola Valley High School, an Espanola Municipal School District school, at all material times.

2. At all times relevant herein, Plaintiff resided in Espanola, New Mexico, where the New Mexico Constitution gives each child the property right to a free public education. N.M. Const. art. XII, § 1 and N.M.S.A. 1978 § 22-1-4.

3. Defendant Officer Danny Pacheco is a City of Espanola Police Officer, and he was acting under the color of state law and in his individual capacity at all material times.





4. Defendant Sergeant Richard Gallegos is a City of Espanola Police Officer, and he was acting under the color of state law and in his individual capacity at all material times.

5. Defendant Lieutenant Christian Lopez is a City of Espanola Police Officer, and he was acting under the color of state law and in his individual capacity at all material times.

6. Defendant City of Espanola is responsible for the policies, customs, and practices of the agencies of the City, including the Española City Police Department and its employees. The City of Espanola assumes the risks incidental to the maintenance of a law enforcement agency and the employment of its law enforcement officers.

7. This Court has subject matter jurisdiction over the claim and jurisdiction over the parties.

8. Personal Jurisdiction is proper since all parties either resided or conducted business in the District. Additionally, the actions of the Defendants took place within the District.

9. Venue is properly laid in this district because all of the material acts and/or omissions complained of herein occurred in and around the Cities of Espanola and Santa Fe, New Mexico. Defendants are located in Santa Fe County.

## FACTUAL ALLEGATIONS

### I. DEFENDANT CITY OF ESPANOLA POLICE DEPARTMENT HAD PRIOR KNOWLEDGE OF A VIOLENT ATTACK ON PLAINTFF BY STUDENT ON A SCHOOL BUS

10. On January 22, 2010, Plaintiff was being transported to Espanola Valley High School in an Espanola Municipal School District school bus when K.A., a minor student, began kicking and punching the back of his seat.

11. K.A. punched Plaintiff in his face and the back of his head ten to twenty times. He sustained two lacerations on his right cheek and swelling on his face and bumps on his head. K.A. broke Plaintiff's glasses.

12. Espanola City Police Officer Ernie Romero was dispatched to Espanola Valley High School to produce the Uniform Incident Report related to K.A.,'s attack on Plaintiff.

13. Plaintiff suffered lacerations, swelling, and suffered multiple bumps on his head, as reported in the related Uniform Incident Report. He also began to suffer from Post Traumatic Stress Disorder as a result of the beating.

14. Officer Romero contacted Martha Fernandez of Juvenile Probation to advise her of the incident and sought the criminal prosecution of K.A..

15. K.A. was not expelled from Espanola Valley High School for his violent battery on Billy Jones although later Billy Jones was expelled from Espanola Valley High School for drawing pictures for a horror movie and creating a list of characters for his movie story boards.

16. Defendant City of Espanola and the Defendant officers knew or should have known that school administrators were failing to protect students like Billy Jones from being bullied by students like K.A., and that Billy Jones was in need of therapeutic services for having been a victim of a violent crime while on a school bus by a fellow student.

17. Defendant City of Espanola placed officers, such as Defendant Pacheco, in the Espanola High School, who they knew or should have known was a threat to the safety of students as he has a practice and pattern of violating the constitutional and privacy rights of students.

## II. DEFENDANT CITY OF ESPANOLA POLICE DEPARTMENT OFFICERS' INITIAL INVESTIGATION INTO ALLEGED "HIT LIST".

18. Ms. Devanna Ortega, the Assistant Principle of Espanola Valley High School, is an Espanola Municipal District Schools employee.

19. On September 7, 2010, at approximately 2 p.m., Ms. Ortega called for security to escort Billy Jones to her office.

20. School security guard Christopher Archuleta took Billy from class to Ortega's office.

21. Defendants Officer Pacheco and City of Espanola Police Officer Christian Lopez were present in Ortega's office.

22. Defendants searched Plaintiff's backpack and person.

23. During the search of Plaintiff's backpack, Defendant officers found Billy's story boards (pencil and crayon drawings) of a horror movie; and, a list of movie characters on three ring binder lined papers.

24. One piece of lined paper seized from Plaintiff's backpack had the words, "List for Hell," on the top and the following list of movie characters:

"1. Pink Whore;

2. Special Blonde;

3. Fat ASS;

4. Chris D;

5. Chriss [sic]; and

6. Austin."

25. Defendant Officer Christian D. Lopez alleged to the media that when he asked Plaintiff about the "List for Hell," and the pictures, "Billy told me the pictures were of a movie he was going to make."

26. Defendant officers falsely asserted to the media and in their incident reports that the "List for Hell," was a "hit list" of fellow students. Plaintiff's therapist told Plaintiff and his mother that his drawing and story boards were therapeutic. Plaintiff's therapist told him that drawing would help him with the stress of being a victim of bullying at the school.

27. Defendant officers did not record their custodial questioning of Plaintiff in the school office.

28. Plaintiff did not have any weapon on his person or in his possession at all material times.

29. Plaintiff made no verbal threat to the students of Espanola Valley High School.

30. During the questioning of Billy by the Defendant officers, Dr. Lloyd Vigil (school psychologist) determined that Billy was in need of a psychiatric evaluation to determine whether he was a threat to himself.

31. Defendant officers learned that Billy Jones was transported to St. Vincent's Treatment Center for psychiatric evaluation. Defendant officers disclosed to the media that Billy Jones was transported from school to a psychiatric medical evaluation in violation of his right to privacy in his medical care.

32. Roberta Goodman, a clinician at St. Vincent's, clinically assessed Plaintiff and found he was not a threat to himself or others.

33. On September 7, 2010, Carlos Guzman, R.N., an employee of St. Vincent's Treatment Center, discharged Billy into the care of his mother.

## III. DEFENDANT OFFICERS' DEFAMATION & UNREASONABLE ARREST OF BILLY JONES

34. On September 8, 2010, Defendant Pacheco falsely reported to Defendant Lopez that Billy Jones had "escaped" from St. Vincent's Treatment Center.

35. On September 8, 2010, at 7:30 am, Defendant Pacheco falsely reported to Espanola High School security officer Ms. Alexandra Rosas that Billy "had escaped from the physciatric [sic] unit that he was commited [sic]."

36. According to Ms. Rosas Incident Report, she passed along Officer Pacheco's false claim to Mr. Arthur Salazar (the school principal), and to Ms. Devanna Ortega, the Assistant Principle of Espanola Valley High School.

37. As a result of Defendant Pacheco's false report, during the morning hours of September 8, 2010, the school's administration instituted a "lockdown," at the Espanola Valley High School. During the lockdown, students were confined to their classroom and not allowed to leave. All entrances to the school were closed, while the Espanola Police department and school security guards conducted a classroom by classroom search.

38. No weapons were found during the search of the students on campus.

39. Defendant Officer Pacheco's false claim resulted in a hysterical fear throughout the school that Plaintiff intended to commit a violent act against fellow classmates at Espanola Valley High School.

40. Officer Pacheco's false escape-from-a-mental-hospital claim was divulged to the press as well as school administrators slandering Billy to the school and his community.

41. The press printed multiple news stories using Billy Jones' name, quoting Defendant Officer Lopez as saying he "believes the boy, who moved to the area from Georgia about two years ago, had been picked on or bullied at school and that he's suffering from mental health problems."

42. Billy Jones did not attend classes at Espanola Valley High School following September 7, 2010. The police had no evidence that Plaintiff was going to bring a weapon to school or that he had escaped from a mental hospital.

43. Nonetheless, Defendant Lopez publicly likened Billy Jones to one of the Columbine High School shooters, charactering him to his school and community as a mentally unstable and violent threat to his fellow students.

44. On September 9, 2010, Plaintiff attended a counseling treatment with Sarah Whitmire at Ayundantes on North Riverside Drive.

45. Defendant Gallegos interrupted Plaintiff's treatment with Ms. Whitmire to execute a warrantless arrest of him.

46. Defendant Gallegos unlawfully arrested Plaintiff stopping his counseling treatment session to place him in handcuffs.

47. Without probable cause, Defendant Gallegos charged Plaintiff with "Attempt to Commit a Felony" and "Aggravated Assault," alleging that Billy Jones intended to murder his fellow students- a felonious act.

48. Defendant Gallegos told the press "To me this kid was like a walking time bomb."

49. Plaintiff was in the process of seeking medical care for mental/emotional disorders when he was arrested.

50. Plaintiff is disabled pursuant to the Americans with Disabilities Act because of his mental/emotional disorder.

**COUNT I - FOURTH AMENDMENT VIOLATIONS: UNLAWFUL ARREST, UNLAWFUL SEIZURE & EXCESSIVE FORCE**

(Against Individual Defendant City of Espanola Police Department Officers)

51. Plaintiffs hereby incorporate paragraphs 1-51 as if fully restated herein.

52. Defendant Officer Pacheco's false statements, Defendant Lopez's false statements and associating Plaintiff with his fantasies about Columbine, and Defendant Gallegos' lockstep actions and misguided incident report resulted in the unreasonable arrest of Billy Jones.

53. Defendant Gallegos fabricated charges against Plaintiff, relying exclusively on the purely speculative statements of Defendant Lopez and Defendant Pacheco.

54. Defendants Pacheco, Lopez, and Gallegos made no attempt to investigate the circumstances of Plaintiff's release from St. Vincent's Counseling Center.

55. Defendant Gallegos seized Plaintiff from his counseling session.

56. Defendant Gallegos locked Plaintiff in an adult jail cell at the Espanola County Jail.

57. After some time in the jail cell, Plaintiff's wrists, arms and legs were handcuffed and he was taken to the Santa Fe Juvenile Detention Facility.

58. Plaintiff was detained in Santa Fe Juvenile Detention Facility for two days.

59. District Attorney Angela Pacheco immediately dropped the groundless charges, and Plaintiff was released.

60. Defendants intrusion on Billy Jones' bodily integrity was not justified at its inception.

61. Defendants lacked probable cause to arrest Plaintiff for any charges.

62. Defendant's arrest of Plaintiff was not reasonable related to the circumstances that gave rise to it. Any reasonable officer should have known that it was unreasonable to arrest a fifteen (15) year old boy, Plaintiff's age at the time of the arrest, in the midst of a counseling session.

63. Defendants criminalizing the pencil and crayon drawings of a bullied child serves no governmental purpose.

64. Defendant's use of force was objectively unreasonable as Plaintiff had committed no crime in drawing pictures.

65. Defendants had no lawful authority to detain Plaintiff and used excessive force when causing and when shackling of the boy.

66. Defendants' handcuffing and shacking of Billy Jones was a violation of his right to bodily integrity, served no governmental interest and constituted excessive force and an unreasonable seizure of the boy.

67. There is a direct cause between Defendant's unconstitutional actions and Plaintiff's injuries. Defendant's actions were willful, wanton, obdurate, and in gross and reckless disregard of Plaintiff's constitutional rights.

68. As a result of the September 9, 2010 incident, Espanola Municipal District School held a meeting to discuss Billy Jones and whether he could safely return to school.

69. Plaintiffs' parents were notified via postal mail on September 29, 2010 that Billy Jones was expelled from Espanola Public Schools. Plaintiff was forced to relocate to continue his education.

**COUNT II - TORT CLAIMS- BATTERY, FALSE IMPRISONMENT & DEFAMATION (ALL DEFENDANTS)**

70. Plaintiffs incorporate herein the allegations in paragraphs 1- 69 as if stated herein.

71. Under the facts as previously alleged, Defendants' excessive restraint and shackling of Plaintiff constituted battery.

72. The defendants' arrest of Plaintiff from a counseling session amounted to false imprisonment under state law.

73. Defendant Pacheco's false statements to Defendant Lopez and to school administrators; and, Defendant Gallegos' written statements and speculation about Plaintiff's alleged motives

against his fellow students and the false charging of attempted murder, amounted to defamation under state law.

74. The individual Defendant officers are liable to Plaintiff for the damages they caused and the City of Espanola is liable under the theory of *respondeat superior* for those damages caused by its employees.

**COUNT III NEGLIGENCE CAUSING UNLAWFUL ARREST, BATTERY, FALSE IMPRISONMENT, DEFAMATION, PHYSICAL INJURY WAIVED BY THE NEW MEXICO TORT CLAIMS ACT AGAINST CITY OF ESPANOLA**

75. Plaintiffs claim the allegations above as though fully set forth herein. City of Espanola Police Department are public employees and acted as representatives of the City of Espanola in the Espanola High School.

76. The City of Española negligently trained and supervised the individual Defendant Officers creating an unsafe environment in the Espanola High School consisting of a tort waived pursuant to the New Mexico Tort Claims Act, specifically NMSA 41-4-6.

77. The individual Defendant officers were acting within the course and scope of their duties when the injuries occurred to Plaintiff.

78. Defendant City of Espanola is responsible under the doctrine of *respondeat superior* for the acts and omissions of the individual Defendant officers.

79. If a jury determines that individual officers either intentionally or negligently injured Plaintiff, the Defendant City of Espanola is liable as well.

80. The Espanola Police Department had prior knowledge of two previous civil rights judgments against Defendant Pacheco.

81. Defendant Pacheco had previously violated the Fourth Amendment rights of two citizens in the Village of Questa and of another Espanola High school student.

82. Defendant Pacheco had been fired from Taos Pueblo Police Department, Tesuque Pueblo Police Department, and Santa Clara Police Department due to acts of dishonesty and unlawful seizures prior to his being hired by the City of Espanola.

83. As a direct and proximate result of Defendants' actions, Plaintiff was injured, which damages include, but are not limited to, loss of enjoyment of life, physical injury, loss of reputation, and mental and emotional distress.

84. Defendant City of Espanola had a duty to exercise ordinary care when providing services for children in their charge, including Plaintiff.

85. The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for injuries resulting from negligent operation of a building or negligent battery. *See* N.M. Stat. Ann. 41-4-12.

86. The immunity granted by the Tort Claims Act does not apply to the negligence of the Defendant City employees who hired and fail to adequately train, supervise, or ratified the unlawful and unconstitutional behavior the individual Defendant officers resulting in the creation of an unsafe environment for public school students amounting to negligent operation of a building and the negligent battery of Plaintiff.

87. As a direct and proximate result of Defendants' breach of duties, Plaintiff suffered damages.

**COUNT IV –VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AGAINST CITY OF ESPANOLA**

88. Plaintiff incorporates the preceding paragraphs by reference herein.

89. The City of Espanola is a public entity as defined by the Americans with Disabilities Act, 42 U.S.C. § 12131(1)(B) (1990).

90. The Espanola Police Department does not have sovereign immunity for claims arising under the Americans with Disabilities Act. 42 U.S.C. § 12202 (1990).

91. Billy Jones was a qualified individual with a disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12131(2) (1990).

92. On the basis of his disability Billy Jones was denied the benefits of services, programs, and activities of the Espanola Police Department, including but not limited to the benefits of:

a. encounters with officers properly trained to deal with citizens who are mentally impaired;

b. being treated with dignity by the government entity sworn to protect its community's citizens.

93. On the basis of his disability, the Espanola Police Department discriminated against Billy Jones by choosing not to provide adequate protection for citizens with mental/emotional disabilities.

94. Defendants violated mandatory New Mexico State Statutes, Administrative Codes, and Title II of the Americans with Disabilities Act.

95. Defendants knew or should have known that Billy Jones was suffering from a mental/emotional disability and that he needed medical treatment and should hve been allowed to continue with his medical treatment rather than being falsely arrested.

96. Defendants failed to respond appropriately to Plaintiff's medical condition, PTSD, and actively prohibited Plaintiff from his medical treatment when Billy was handcuffed and arrested in his counselor's office.

97. Title II of the Americans with Disabilities Act forbids individuals, such as Defendants, from discriminating against qualified individuals, such as Billy, on the basis of their disability.

98. Defendants discriminated against Billy when Defendants arrested Plaintiff for the manifestations of his disability and medical condition.

99. Billy's conduct was legal and he was wrongfully arrested for the manifestations of his disability in violation of Title II of the Americans with Disabilities Act.

100. Defendants failed to provide Billy Jones with adequate accommodations for his disability during his arrest, charging and detention in additional violation of Title II of the Americans with Disabilities Act

101. As a result of Defendants' conduct, Plaintiff suffered damages.

## PRAYER FOR RELIEF

102. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered injuries resulting in medical expenses, expenses for psychological care and counseling, likely to continue to result in expenses for necessary psychological care and counseling into the foreseeable future; pain and suffering, temporary and probable permanent psychological impairment, loss of reputation, loss of educational opportunities, and other damages.

103. The intentional nature of the acts of the individual Defendants were reckless and in utter disregard of the rights and safety of Plaintiff, constitute grounds for punitive damages to be awarded against them in an amount sufficient to punish them for the subject acts and to dissuade them and others from similar actions in the future.

104. Plaintiff seeks attorneys' fees and costs pursuant to Section 1988 of the Civil Rights Act.

**WHEREFORE** Plaintiff requests that this Court enter Judgment against Defendants in an amount sufficient to compensate Plaintiff for his damages, for punitive damages against the individual Defendants, as determined by the Court, for the attorneys' fees and costs of this

action, for prejudgment interest and post judgment interest as provided by law, and for such other and further relief as the Court deems just and proper.

Respectfully Submitted By:

**The Kennedy Law Firm**

***/s/ Shannon L. Kennedy***
Joseph Kennedy
Shannon Kennedy
1000 Second Street NW
Albuquerque, New Mexico 87102
(505) 244-1400 F:(505)244-1406